FILED
10/31/2023
Clerk, U.S. District Court
District of Montana
Billings Division

Philip McGrady
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
philip@lawmontana.com

Lucas A. Wallace
ODEGAARD MILLER LAW, PC
845 Great Northern Blvd.
Helena, MT, 59601
Tel:  (406) 222-2222
lucas@mtlawyers.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| DAVID FOX, | Cause No. CV-23-125-BLG-SPW-TJC |
| Plaintiff, | District Judge: |
| vs. | |
| WESTMORELAND ROSEBUD MINING LLC, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff David Fox, by and through his attorneys of record, Heenan & Cook and Odegaard Miller Law, hereby states, alleges and avers as follows:

**JURISDICTION AND VENUE**

1. At all times relevant herein, David Fox was a resident of Rosebud

County, Montana.

2. At all times relevant herein, Westmoreland Rosebud Mining, LLC was a for-profit corporation registered with the Montana Secretary of State and authorized to do business in Montana. Westmoreland operates a surface coal mine in Rosebud County, Montana ("The Rosebud Mine"). On information and belief, Westmoreland is incorporated in the state of Delaware and has its corporate headquarters in the state of Colorado.

3. Jurisdiction over this Defendant is proper because Defendant does business and has offices in the State of Montana and Defendant engaged in conduct that resulted in the accrual of a tort action in Montana.

4. This Court has Jurisdiction over Plaintiff's claims arising out of Federal law under 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is more than $75,000.

5. Venue in this court is proper because Defendant engaged in tortious conduct that resulted in the accrual of a tort action in Rosebud County, Montana.

6. With respect to the claims for discrimination outlined below, Fox has exhausted his administrative remedies through the Montana Human Rights Bureau.

## GENERAL ALLEGATIONS

7. Fox was employed at the Rosebud Mine for approximately twenty-four years.

8. Fox's heavy-duty job duties caused wear and tear on his body. He

suffered from a number of physical disabilities, some of which were work-related, some of which were non-work related.

9. For more than 20 years, the Rosebud Mine's workers' compensation carrier was Montana State Fund. During his career, Fox had occasionally filed workers' compensation claims for work-related injuries. The process for filing a workers' compensation claim for a work-related injury was to notify the supervisor or safety manager, who would fill out the paperwork for submission to Montana State Fund.

10. For his prior injuries and claims, Fox had worked with Montana State Fund.

11. At all relevant times, Jackie McPhereson was Rosebud Mine's Human Resources Director. McPhereson's actions, as described herein were undertaken on behalf of Westmoreland as an agent in the course and scope.

12. During Fox's career at the Rosebud Mine, he sought to change positions to a lighter duty job to better accommodate his disability. He applied for a job as an operator, but the job was given to a less qualified applicant.

13. On or about August 10, 2021 Fox became unable to perform his job duties because of cellulitis.

14. Westmoreland granted Fox Family Medical Leave Act "FMLA" leave from mid-August 2021 through September 15, 2021.

15. On or about September 30, 2021, McPhereson wrote to Fox and informed him that his short-term disability benefits were suspended, and asked him

to obtain a Physician's Disability Statement from his physician.

16. Also on September 30 of 2021, Fox's doctor, Dr. Jeff Kennedy, filled out a Physician's Disability Statement indicating Fox would be off work due to Covid 19 quarantine protocols until November 5, 2021.

17. On October 15, Dr. Kennedy filled out a new Physician's Disability Statement. On the form, Dr. Kennedy wrote "work related injuries" to the left elbow and right knee. Answering the questions regarding the "Amount of Leave Needed," Dr. Kennedy wrote: "Unclear at this time… Needs to have evaluation at work as to job duties he can or cannot do."

18. On October 18, 2021, McPherson, wrote to Fox to communicate that his FMLA leave was exhausted. She also informed him that he was not eligible for Short Term Disability due to the Coronavirus pandemic, but, "you will continue on medical leave status … for up to 48 months from the date your original leave began."

19. Although Fox was still quarantined for Covid 19, on or about October 22, Fox drove to the job site and dropped off the Physician's Disability Statement paperwork from his October 15 appointment.

20. On or about October 27, 2021, McPhereson wrote another letter to Fox, reiterating the denial of short-term disability pay, this time because Dr. Kennedy's paperwork indicated that his injuries were work-related. The letter asked Fox to contact Chris Cosgrave "to file the appropriate paperwork to submit to Westmoreland's Worker's Comp. carrier."

21. Cosgrave was the Safety Manager for the Rosebud mine and his actions

described herein were as an agent in the course and scope of his employment with Westmoreland.

22. As the Safety Manager for Westmoreland at the time, it was Cosgrave's job to file the appropriate claim paperwork for work-related injuries or occupational diseases.

23. Fox contacted Cosgrave and explained that he was doing so at the direction of McPhereson. Cosgrave was confused because there was no specific injury on file for Fox's elbow or knee. He directed Fox to contact Montana State Fund.

24. Fox attempted to contact Montana State Fund as directed by the Safety Manager Cosgrave. However, unbeknownst to Fox, Montana State Fund was no longer Westmoreland's workers' compensation insurance carrier, Westmoreland having changed carriers on or about July 1, 2020.

25. Westmoreland's employed a Multicultural Coordinator, Darlene Bement, who also assisted McPherson with human resources issues including FMLA requests. Bement's actions described herein were in the course and scope of her employment as an agent of Westmoreland.

26. Bement spoke to Fox November 24, 2021, and Fox told Bement that he had a doctor's appointment on November 30.

27. On November 29, 2021, McPhereson allegedly sent a letter to Fox, stating: "you are directed to file your [workers' compensation] claim by December 6th, should you fail to follow this directive, I will conclude you have abandoned your position and proceed with termination."

28. Bement called Fox on November 30 and did not mention that any letter had been sent to him. Fox was unaware of the deadline to file a claim or be fired.

29. McPhereson sent the letter dated November 29 certified mail, return receipt. McPhereson knew that Fox had not received the letter. Fox had to travel a significant distance to the post office to pick up his mail, with his disability and limited mobility, he was not picking up the mail every day.

30. On December 8, 2021, McPhereson wrote to Fox stating: "The reason for your termination is you failed to follow a directive and missed the deadline give to you in a certified letter dated November 29th (see attached)." Enclosed was a copy of the November 29 letter. Fox's first notice of the deadline to file a workers' compensation claim was when he picked up the letter terminating his employment on December 10, 2021.

## **COUNT I –INFRINGEMENT OF FMLA RIGHTS – DENIAL OF FMLA LEAVE**

31. Fox restates and re-alleges all previous allegations as fully set forth herein.

32. This is a claim for violation of the Family and Medical Leave Act of 1993, title 29 United States Code, sections 2601 et seq.

33. Defendant regularly employs at least 50 employees at or within 75 miles of plaintiff's work site.

34. On October 18, 2021, Fox had been employed by Westmoreland at least 1,250 hours during the previous 12-month period.

35. It is unlawful for an employer (a) to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1).

36. FMLA regulations state that an employee is entitled to 12 weeks of leave in a 12-month period.

37. Employers may elect to have a policy that defines the 12-month period as either:

   a. The calendar year;

   b. Any fixed 12-month leave year, such as a fiscal year, a year required by state law, or a year starting on an employee's anniversary date;

   c. The 12-month period measured forward from the date any employee's first FMLA leave begins; or,

   d. "rolling" 12-month period measured backward from the date an employee uses any FMLA leave.

38. Westmoreland failed to properly elect one of the four options, and as a result, the 12-month period most beneficial to the employee must be used.

39. Defendant violated plaintiff's rights under the Family and Medical Leave Act because it denied plaintiff's request for family or medical leave on or about October 18, 2021.

40. In the alternative, if Westmoreland did successfully elect one of the alternative methods for calculating the 12-month leave year, Mr. Fox requalified for FMLA leave on or about November 0f 2021.

41. Westmoreland's actions described above—terminating Fox for failure to "follow a directive and missed the deadline" when it knowingly had not communicated the deadline to him—infringes on Fox's rights to leave under the FMLA at a time when he was entitled to medical leave under the FMLA, or in the alternative, were calculated to terminate his employment before he requalified for leave under the FMLA.

42. Defendant willfully violated the FMLA by refusing to comply with its requirements and denying a benefit to which Plaintiff was entitled under the FMLA.

43. As a direct result of Defendant's willful infringement, Plaintiff suffered and continues to suffer damages.

44. Defendant is liable for Plaintiff's damages and losses in wages, salary, benefits, front pay, and other compensation; emotional distress; other actual monetary losses; interest on any determined amount; attorney's fees and costs; liquidated damages in an amount equaling Plaintiff's actual damages; and all other relief allowed by law and such equitable relief as may be appropriate. *See* 29 U.S.C. § 2617(a)(1)(A)-(B).

### **COUNT II – INFRINGEMENT OF FMLA RIGHTS – TERMINATION BASED ON PROTECTED LEAVE**

45. Fox restates and re-alleges all previous allegations as fully set forth herein.

46. This is a claim for violation of the Family and Medical Leave Act of 1993, title 29 United States Code, sections 2601 et seq.

47. As described above, Westmoreland is covered by the FMLA and the

Plaintiff exercised or attempted to exercise his rights to medical leave under the FMLA.

48. Pursuant to 29 C.F.R. § 825.220(c), employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as disciplinary actions or termination.

49. During Fox's protected FMLA leave, the employer expected him to "keep in touch" on an arbitrary schedule, in violation of the FMLA, which provides that conditions that are certified as having a minimum duration of more than 30 days, the employer must wait to request a recertification until the specified period has passed.

50. Fox's alleged failure to "keep in touch" during his protected FMLA leave was a factor which contributed to Westmoreland's decision to terminate his employment.

51. Defendant willfully violated the FMLA by terminating Fox in large part for an alleged failure to "keep in touch" with the Human Resources Director during his protected FMLA leave.

52. As a direct result of Defendant's willful infringement, Plaintiff suffered and continues to suffer damages.

53. Defendant is liable for Plaintiff's damages and losses in wages, salary, benefits, front pay, and other compensation; emotional distress; other actual monetary losses; interest on any determined amount; attorney's fees and costs; liquidated damages in an amount equaling Plaintiff's actual damages; and all other

relief allowed by law and such equitable relief as may be appropriate. *See* 29 U.S.C. § 2617(a)(1)(A)-(B).

## COUNT III – VIOLATION OF THE ADA – DISCRIMINATORY TERMINATION

54. Fox restates and re-alleges all previous allegations as fully set forth herein.

55. This is a claim for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. subchapter I ("ADA").

56. At all times material to this Complaint, Westmoreland had 15 or more employees and was an "employer" subject to the ADA.

57. Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

58. Under Westmoreland's policy, a medically disabled employee was entitled to up to 48 months of medical leave.

59. As described above when Fox's doctor wrote "work-related" on the FMLA certification form, Westmoreland cancelled Fox's leave without notice and sent him a letter with a deadline of mere days to file a workers' compensation claim or be fired.

60. Westmoreland refused to provide Fox information about applying for

long term disability benefits.

61. Westmoreland's disparate treatment of employees with a work-related medical disability compared to employees with a non-work-related medical disability is discrimination in the terms, conditions, and privileges of employment based on disability in violation of the ADA.

62. Westmoreland's actions described above—terminating Fox for failure to "follow a directive and missed the deadline" when it knowingly had not communicated the deadline to him—were a pretext for discriminating against Fox based on his disability in violation of the ADA.

## **COUNT IV – VIOLATION OF THE ADA – FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**

63. Fox restates and re-alleges all previous allegations as fully set forth herein.

64. This is a claim for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. subchapter I ("ADA").

65. Title I of the ADA prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

66. Westmoreland knew that Fox required an accommodation to return to

work due to his doctor's note stating: "Needs to have evaluation at work as to job duties he can or cannot do"; Westmoreland knew that Fox had long sought to apply for and transfer to a different, lighter duty position because of his physical disabilities.

67. Westmoreland failed to engage in the interactive process to determine whether an accommodation could be made for Fox's disability.

68. Westmoreland could have reasonably provided an accommodation that would have allowed Fox to return to work but failed to provide any accommodation for Fox.

69. Westmoreland's failure to consider or provide any accommodation for Fox is a violation of the ADA.

## COUNT IV – VIOLATION OF MONTANA STATUTE § 39-71-317

70. Fox restates and re-alleges all previous allegations as fully set forth herein.

71. Section 39-71-317(1), MCA, provides: "An employer may not use as grounds for terminating a worker the filing of a claim under [the Workers' Compensation Act].

72. Section 27-1-202, MCA provides "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation for it in money, which is called damages."

73. Westmoreland's actions described above, in terminating Fox on the grounds of failure to file a workers' compensation claim were unlawful pursuant to § 39-71-317(1).

74. Section 39-71-317(1) creates an independent cause of action.

75. Defendant is liable for Plaintiff's damages and losses in wages, salary, benefits, front pay, and other compensation; emotional distress; other actual monetary losses; interest on any determined amount; and costs.

## COUNT V – NEGLIGENCE PER SE – VIOLATION OF MONTANA STATUTE § 39-71-307(1) and 39-71-317, MCA

76. Fox restates and re-alleges all previous allegations as fully set forth herein.

77. Section 39-71-307(1), MCA, provides that the employer has a legal duty to file a workers' compensation claim, not the employee.

78. Section 39-71-317(1), MCA, provides: "An employer may not use as grounds for terminating a worker the filing of a claim under [the Workers' Compensation Act].

79. Westmoreland's actions as described above, in failing its legal duty to file a workers' compensation claim and terminating Fox on the grounds of his failure to file a workers' compensation claim violated § 39-71-307(1) and § 39-71-317(1), MCA.

80. These statutes were enacted to protect injured workers from being retaliated against or terminated on the grounds of the filing of a workers' compensation claim.

81. Fox is a member of the class of persons the statutes were designed to protect.

82. The termination caused Fox harm including lost wages, lost benefits, and emotional distress, which are the kinds of losses the statute was enacted to prevent.

83. The statutes were intended to regulate employers such as the Defendant.

84. Defendant's violations of these statutes constitute negligence per se.

85. Defendant is liable for Plaintiff's damages and losses in wages, salary, benefits, front pay, and other compensation; emotional distress; other actual monetary losses; interest on any determined amount; and costs.

## **COUNT VI – EXEMPLARY DAMAGES PURSUANT TO MONTANA STATUTE 27-1-221**

86. Fox restates and re-alleges all previous allegations as fully set forth herein.

87. Montana law provides for exemplary damages for actual malice pursuant to § 27-1-221, MCA.

88. Defendant knew Fox was suffering from multiple health problems and had to travel a significant distance to the post office to pick up his mail.

89. Defendant knew that Fox had not received the certified letter allegedly mailed November 29 with an 8-day deadline to file a workers' compensation claim or be fired.

90. Defendant lulled Fox into a false sense of security by communicating with him phone, but not telling him that he was under a short deadline to file a

workers' compensation claim or lose his job.

91. Defendant did not believe that Fox had a valid workers' compensation claim and expected that the claim would be denied if it was filed.

92. Defendant knew that terminating Fox would cause him to lose his income and benefits, including workers' compensation benefits and health insurance, and cause him emotional distress.

93. Defendant proceeded to act with intent to cause harm or indifference to the high probability that terminating Fox would cause harm, and terminated him anyway.

94. The Defendant's actions as described above, in terminating Fox in violation of § 39-71-317(1) , MCA on the pretext of the filing of a workers' compensation claim, while knowing that he had no notice of the employer's deadline to file a claim, constitute actual malice entitling the Plaintiff to Punitive and Exemplary damages under Montana law in an amount sufficient to punish the Defendant and deter such conduct.

## JURY TRIAL DEMAND

Fox demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief:

1. Damages under the FMLA:

(a) Damages under 29 U.S.C. § 2617(a)(1)(A) (i)(I) for any wages, salary, employment benefits, or other compensation denied or lost because of defendant's wrongful conduct;

(b) Damages under 29 U.S.C. § 2617(a)(1)(A)(i) (II) equal to the actual monetary losses sustained by plaintiff because of defendant's wrongful conduct, such as the cost of providing care, up to an amount equal to 12 weeks of wages or salary of plaintiff;

(c) Interest under 29 U.S.C. § 2617(a)(1)(A)(ii);

(d) Liquidated (double) damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

(e) Such equitable relief under 29 U.S.C. § 2617(a)(1)(B) as may be appropriate

2. Damages under the ADA:

(a) compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(2) for defendant's violation of § 102(b)(5) of ADA (42 U.S.C. § 12112(b)(5)) by failing to make reasonable accommodation

(b) compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(2) for Defendant's discriminatory termination of Plaintiff.

(c) for back pay and front pay under 42 U.S.C. § 2000e-5(g)(1) (c);

(d) For attorney fees, expert witness fees, and court costs.

3. Damages for violation of § 39-71-317, MCA:

(a) For all special and general damages suffered by Plaintiff;

(b) For exemplary punitive damages;

(c) For Plaintiff's costs of suit.

4. Damages for Negligence Per Se:

(a) For all special and general damages suffered by Plaintiff;

(b) For exemplary punitive damages;

(c) For Plaintiff's costs of suit.

5. Punitive Exemplary Damages as are just and proper.

6. And or such other further relief as the Court deems just and proper.

DATED this 31st day of October, 2023.

                                      ODEGAARD MILLER LAW, PC
                                        Attorney for Plaintiffs

                                      By /s/LUCAS_A._WALLACE
                                          Lucas A. Wallace